Justice Stevens,
with whom Justice Souter, Justice Ginsburg, and Justice Breyer join, dissenting.
A capital sentencing procedure that required the jury to return a death sentence if even a single juror supported that outcome would be the “ ‘ “height of. arbitrariness.” ’ ” Ante, at 419. The use of such a procedure is unquestionably unconstitutional today, and I believe it was equally so in 1987 when respondent’s death sentence became final. The Court reaches a different conclusion because it reads Mills v. Maryland, 486 U. S. 367 (1988), to announce a “new rule” of criminal procedure that may not be applied on federal habeas review to defendants whose convictions became final before Mills was decided. Ante, at 408. In my opinion, however, Mills simply represented a straightforward application of our longstanding view that “the Eighth and Fourteenth *421 Amendments cannot tolerate the infliction of a sentence of death under [a] legal syste[m] that permit[s] this unique penalty to be . . . wantonly and , .. freakishly imposed.” Furman v. Georgia, 408 U. S. 238, 310 (1972) (Stewart, J., concurring).
The dispute in Mills concerned jury instructions and a verdict form that the majority read to create a “substantial probability that reasonable jurors ... well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance.” 486 U. S., at 384. The resulting unanimity requirement, the majority concluded, violated the Constitution in that it “allow[ed] a ‘holdout’ juror to prevent the other jurors from considering mitigating evidence.” McKoy v. North Carolina, 494 U. S. 433, 438 (1990) (quoting Mills, 486 U. S., at 375). When Mills was decided, there was nothing novel about acknowledging that permitting one death-prone juror to control the entire jury’s sentencing decision would be arbitrary. That acknowledgment was a natural outgrowth of our cases condemning mandatory imposition of the death penalty, Roberts v. Louisiana, 431 U. S. 633 (1977) (per curiam); Woodson v. North Carolina, 428 U. S. 280 (1976) (plurality opinion), recognizing that arbitrary imposition of that penalty violates the Eighth Amendment,[1] e.g., Zant v. Stephens, 462 U. S. 862, 874 (1983); Gregg v. Georgia, 428 U. S. 153, 189 (1976); Furman, supra, and mandating procedures that guarantee full consideration of miti *422 gating evidence, e. g., Eddings v. Oklahoma, 455 U. S. 104 (1982); Lockett v. Ohio, 438 U. S. 586 (1978) (plurality opinion). Indeed, in my judgment, the kind of arbitrariness that would enable 1 vote in favor of death to outweigh 11 in favor of forbearance would violate the bedrock fairness principles that have governed our trial proceedings for centuries. Rejecting such a manifestly unfair procedural innovation does not announce a “new rule” covered by Teague v. Lane, 489 U. S. 288, 301-302 (1989), but simply affirms that our fairness principles do not permit blatant exceptions.[2]
■This leaves only the question whether reasonable jurors could have read Pennsylvania’s jury instructions and verdict *423 form to impose a unanimity requirement with respect to mitigating circumstances. For the reasons identified by the Third Circuit, Banks v. Horn, 271 F. 3d 527, 543-551 (2001); see also Banks v. Horn, 316 F. 3d 228, 247 (2003) (leaving in place the relevant portions of the court’s earlier opinion), particularly with respect to the verdict form, 271 F. 3d, at 549-550, I answer this question in the affirmative.
I would affirm the judgment of the Court of Appeals.

 Justice Kennedy made precisely this point in his concurrence in McKoy v. North Carolina, 494 U. S. 433, 454 (1990):
“Application of the death penalty on the basis of a single juror’s vote is ‘intuitively disturbing.’ . . . More important, it represents imposition of capital punishment through a system that can be described as arbitrary or capricious. The Court in Mills described such a result as the ‘height of arbitrariness.’... Given this description, it is apparent that the result in Mills fits within our line of cases forbidding the imposition of capital punishment on the basis of ‘caprice,’ in ‘an arbitrary and unpredictable fashion,’ or through ‘arbitrary’ or ‘freakish’ means.”

 Supporting this reading, even the dissenting Justices in Mills v. Maryland, 486 U. S. 367 (1988), did not challenge the majority’s assumption that instructions unambiguously requiring unanimity on the existence of any mitigating factor would be unconstitutional; they argued only that reasonable' jurors would have understood that in order “to mark ‘no’ to each mitigating factor on the sentencing form, all 12 jurors [had to] agree.” Id., at 394 (Rehnquist, C. J., dissenting) (emphasis added). I recognize that some Justices believe the Mills Court had no occasion to consider the constitutionality of a unanimity requirement because the State had conceded the point. See McKoy, 494 U. S., at 459 (Scalia, J., dissenting) (“Although there is language in Mills . . . suggesting that a unanimity requirement would contravene this Court’s decisions..., that issue plainly was not presented in Mills, and can therefore not have been decided”). Mills’ author, Justice Blackmun, disagreed with this view, however: “[T]he Maryland instructions [at issue in Mills] were held to be invalid because they were susceptible of two plausible interpretations, and under one of those interpretations the instructions were unconstitutional.” McKoy, 494 U. S., at 445 (concurring opinion) (emphasis in original).
I think Justice Blackmun had the better of this argument, but even if one assumes the Mills dissenters failed to defend the constitutionality of unanimity requirements because they did not think the issue properly before the Court rather than because they, too, condemned such requirements, my overall point remains the same: executing a defendant when only 1 of his 12 jurors believes that to be the appropriate penalty, would be “so wanto[n] and so freakis[h]” as to violate the Eighth and Fourteenth Amendments, Furman v. Georgia, 408 U. S. 238, 310 (1972) (Stewart, J., concurring), and that violation would have been as clear in 1987 as today.